UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————

№ 07-CV-3397 (JFB) (ARL)

————————————

REXALL SUNDOWN, INC.,

Plaintiff,

VERSUS

PERRIGO CO.,

Defendant.

————————————

**MEMORANDUM AND ORDER**
April 12, 2010

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Rexall Sundown, Inc. ("Rexall" or "plaintiff") brought this false advertising action against Perrigo Company ("Perrigo" or "defendant"), claiming violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state law. Perrigo also brought false advertising counterclaims against Rexall under the Lanham Act and state law.

Both parties sell glucosamine chondroitin nutritional supplements, and each claimed that the other had made false and misleading promotional statements on the packaging of the supplements that it sold. The case was tried before a jury between March 15 and April 7, 2010.

On its claim against Perrigo, Rexall sought to recover Perrigo's profits, as permitted under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). In the context of a pre-trial motion *in limine*, the parties disputed their respective burdens on ascertaining Perrigo's profits. During trial, on March 23, 2010, the Court ruled from the bench that Perrigo bore the burden of making any apportionment with respect to profits and stated that a written opinion would follow. This Memorandum and Order is that opinion.

I. BACKGROUND

Plaintiff Rexall sells a number of nutritional supplements under the brand name Osteo Bi-Flex. The Osteo Bi-Flex products are intended to promote joint health. Defendant Perrigo sells competing store-brand (or "generic") joint-care supplements (hereinafter "the Perrigo products").

Rexall's claim against Perrigo was based on Perrigo's use of statements such as "Compare to Osteo Bi-Flex Glucosamine Chondroitin MSM with Joint Shield

Ingredients," "Compare to Osteo Bi-Flex Ingredients," "Compare to Ingredients of Osteo Bi-Flex," or "Compare Osteo Bi-Flex," on the packaging of the Perrigo products (hereinafter the "Compare To statements."). Rexall claimed that the Compare To statements implied that the Perrigo products either contain the same ingredients as Osteo Bi-Flex or have the same effectiveness as Osteo Bi-Flex. Rexall argued that neither of these implied messages was accurate and that, therefore, the Compare To statements constituted false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

As monetary relief for Perrigo's alleged Lanham Act violation, Rexall sought Perrigo's profits from the sale of the products. Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) provides that a plaintiff who establishes that a defendant has willfully violated one of several Lanham Act provisions is entitled to recover, *inter alia*, the defendant's profits.[1] The statute goes on to state that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

## II. DISCUSSION

Perrigo argued that, under § 1117(a), Rexall bore the burden of establishing what portion of Perrigo's profits were due to the allegedly false Compare To statements, as opposed to other aspects of the packaging and promotion of the Perrigo products. Rexall disagreed and argued that it was only required to prove Perrigo's sales and that Perrigo had

---

[1] Section 1117(a) reads, in full:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

There is some debate about whether willfulness remains a pre-requisite for obtaining a defendant's profits. *See, e.g., Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293 (JFB)(SMG), 2007 WL 74304, at *11 n.17 (E.D.N.Y. Jan. 8, 2007) (collecting cases). This debate, however, is irrelevant to the apportionment issue discussed here.

2

to establish any apportionment. As set forth on the record on March 23, 2010, and as discussed in greater detail below, the Court agrees with Rexall.

Both the plain text of the statute and case law support the proposition that, when a plaintiff seeks a defendant's profits in a Lanham Act false advertising case, the plaintiff must establish only the defendant's sales of the product at issue; the defendant bears the burden of showing all costs and deductions, including any portion of sales that was not due to the allegedly false advertising.

The Court's analysis begins with the plain text of the statute at issue, Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 108 (2d Cir. 1988) ("Analysis commences with § 35's plain language. 'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985))). That statute provides, in relevant part, that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." By its plain terms then, the statute requires the plaintiff to prove "sales only." It does not say that it is plaintiff's burden to prove, for example, "sales due to the false advertising" or "sales due to the violative conduct."

Case law applying § 1117(a) also supports requiring the defendant to prove any apportionment. Numerous cases have placed this burden on the defendant. In *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger, USA, Inc.*, 146 F.3d 66 (2d Cir. 1998), for example, the plaintiff sued clothing manufacturer Tommy Hilfiger for false designation of origin under the Lanham Act. The plaintiff claimed Hilfiger had unlawfully used plaintiff's "Star Class" trademark on clothing it manufactured. The district court permanently enjoined Hilfiger from using the "Star Class" mark. One issue on appeal concerned the district court's calculations of Hilfiger's profits. Among other things, Hilfiger argued that the district court should have subtracted the amount of sales attributable to the Tommy Hilfiger trademark, which appeared along with the Star Class mark on the clothing at issue. The Second Circuit agreed but explained that it was the defendant's—i.e. Hilfiger's—burden to prove "any deduction for sales not based on the infringing [i.e., the Star Class] mark." 146 F.3d at 72. The Second Circuit also noted that, at trial, Hilfiger had in fact introduced evidence that some portion of its sales were "attributable to the appeal of Hilfiger's well-known mark and reputation"—as opposed to the Star Class mark—and directed the district court to consider this evidence on remand. *Id.* Other cases applying § 1117 have also found that it is the defendant who bears the burden of establishing what sales were not due to the conduct alleged to have violated the Lanham Act. *See, e.g.*, *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) ("The burden was therefore on [defendant] to show that certain portions of its revenues . . . were not obtained through its infringement of [plaintiff's] marks."); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63-64 (1st Cir. 2008); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[Defendant] contends that the multiple-game format and Nintendo-compatibility were the cartridges'

3

selling point, not the use of the Nintendo trademark. . . . Even if [defendant's] assertion was plausible, [defendant] did not meet his burden of presenting any evidence at trial on how to apportion damages on this basis."); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning the profits should be placed on the defendants."); *Chloe v. Queen Bee of Beverly Hills*, No. 06 Civ. 3140 (RJH) (MHD), 2009 U.S. Dist. LEXIS 84133, at *16 (S.D.N.Y. July 16, 2009) (noting that "[a]lthough there is a paucity of Second Circuit case law addressing this issue, other courts have placed the burden of apportioning total revenue . . . on the defendant"), *Report & Recommendation adopted sub nom. Chloe v. Zarafshan*, 06-cv-03140, 2009 U.S. Dist. LEXIS 84255 (S.D.N.Y. Sept. 14, 2009); *Dering v. Serv. Experts Alliance LLC*, Nos. 1:06-CV-00357-RWS, 1:06-CV-00358-RWS, 2009 WL 1748067, at *3 (N.D. Ga. June 18, 2009) ("Therefore in a Lanham Act case, once a Plaintiff establishes revenues relating to infringement, the burden is on the infringer to show what portions of the revenues are not attributable to infringement."), *judgment vacated on other grounds by* 2009 WL 2032001 (N.D. Ga. July 2, 2009); *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-Civ, 2009 U.S. Dist. LEXIS 116770, at *44 (S.D. Fla. Apr. 28, 2009) (explaining that "a court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than from infringement of the plaintiff's mark"); *Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304-05 (S.D.N.Y. 2001) ("There is a general presumption that an infringer's sales of goods bearing the infringing mark were due to the selling power of the mark and not any other cause . . . . If [defendant] can prove that certain 'non-infringing elements' somehow contributed to the profits of the alleged infringing goods, it is entitled to deduct this from the profits it must disgorge to Troublé."); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935 F. Supp. 1533, 1552 (M.D. Ala. 1996) ("[A] court may award all profits made during the infringing period, unless the infringer can prove that at least some of these profits flow from his own merit rather than from infringement of the registrant's mark."); *see also Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 36 (1st Cir. 2002) ("The burden of showing that not all profits should be awarded is more akin to the burden of showing the amount of costs to be deducted from profits, which the [Lanham] Act places on defendant."); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992) ("Under this rule, profits from defendant's proven sales are awarded to the plaintiff unless the defendant can show 'that the infringement had no relationship' to those earnings. This shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." (quoting *Mishawaka Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942))); *Dad's Root Beer Co. v. Doc's Beverages*, 193 F.2d 77, 79 (2d Cir. 1952) (discussing § 1117 and explaining "[i]t is . . . derived from, and a broadening of, the provision for remedies for wrongful use of a trademark under the Trade-Mark Act of 1905 . . . where the infringer's profits on sales went to the owner of the mark unless the infringer showed that his infringement had no cash value in sales made by him").[2]

---

[2] Commentary on the Lanham Act is also consistent with these cases. *See, e.g.*, J. Thomas

Perrigo argued that many of these cases are not applicable here because they involve trademark infringement, not false advertising. This argument is without merit. As alluded to above, § 1117(a) applies to a number of causes of action, including trademark infringement, false designation of origin, false advertising, dilution, and cyberpiracy. Nothing in § 1117's text or Second Circuit case law, however, indicates that the burden of apportionment varies with the cause of action asserted. Nor does the statute's prior history support Perrigo's argument. Up until 1988, § 1117(a) expressly applied only to suits involving infringement of registered trademarks.[3] That year, as part of the Trademark Law Revision Act of 1988 (TLRA), Congress amended § 1117(a) and made it explicit that the statute applied not only to trademark infringement claims but also to claims such as false advertising and false designation of origin. *See* Pub. L. No. 100-667, § 132 (1988). In amending the statute, Congress gave no indication that different burdens of apportionment would apply to different Lanham Act causes of action. *See* J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 27.10 (4th ed.) (explaining that, following the TLRA's passage, "all of the statutory remedies available to the owner of a registered mark [were] now equally available to the plaintiff who uses [the Lanham Act] to assert claims of infringement of unregistered marks, tradenames, or trade dress, as well as to assert claims of false advertising and trade libel"). In sum, neither the statutory text, Second Circuit case law, nor the statute's prior history provide any basis for applying in false advertising cases a different rule than the one used in other Lanham Act cases: that defendant bears the burden of apportionment.

The Second Circuit false advertising case that Perrigo did rely on, *Burndy Corp. v. Teledyne Industries. Corp.*, 748 F.2d 767 (2d Cir. 1984), is distinguishable. In *Burndy*, the

---

McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 30:65 (4th ed.) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which may not have been due to use of the infringing mark."); *id.* § 30.66 ("Thus, the plaintiff need only prove gross sales and it is then the infringer's burden to prove (1) *which, if any, of those sales were not attributable to the wrongful act*, and (2) deductible costs and expenses to arrive at net profits." (emphasis added)); David S. Almeling, *The Infringement-Plus-Equity Model: A Better Way to Award Monetary Relief in Trademark Cases*, 14 J. Intell. Prop. L. 205, 224-25 (2007) ("Specifically, the Lanham Act provides that '[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.' In other words, if the defendant can apportion its profits, then the plaintiff is given the appropriate amount and not a windfall. If the defendant cannot apportion its profits, equity supports the view that, having already been held liable for infringement, it is the defendant who should suffer the consequences of its own failure to apportion its profits.")

---

[3] Many courts, however, despite the "express limitation" in the statute's text, applied the statute to infringement of unregistered trademarks, false advertising, and other Lanham Act causes of action. *See Burndy Corp. v. Teledyne Indus. Corp.*, 748 F.2d 767, 771-72 (2d Cir 1984) (assuming without deciding that § 1117(a) applied to false advertising and unfair competition claims); *accord Centaur Commc'n. Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1229 (2d Cir. 1987).

5

plaintiff brought a false advertising and unfair competition claim under the Lanham Act. Both the plaintiff and the defendant manufactured "split bolt," or "SB," connectors, devices designed to ensure the efficient flow of electricity between wire or cable conductors. The plaintiff alleged that the defendant had marketed its connectors as meeting certain industry standards when, in fact, the defendant's products did not meet those standards. The defendant also sold its connectors at lower prices than the plaintiff did. The plaintiff claimed that it had been injured as a result of the false advertising because it had to lower its prices to compete with defendant and to move inventory. The district court found that plaintiff could not show that it was injured by defendant's false advertising. The Second Circuit agreed: "[plaintiff's] credits to its customers were required solely by [defendant's] lower price, not its mislabeling of its product." 748 F.2d at 773. Because the plaintiff had not shown that it was injured by defendant's actions, "an accounting [was] precluded." *Id.*

*Burndy* is distinguishable from the instant case. The plaintiff in *Burndy* could not obtain an accounting of profits because it could not demonstrate an injury caused by defendant's actions. In short, *Burndy* is a case about causation. Here, by contrast, causation was presumed because the Compare To statements on the Perrigo products explicitly referenced Osteo Bi-Flex. *See McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (explaining that "[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer" and, therefore, that "the district court did not err in presuming harm from a finding of false or misleading advertising"). The issue here was who, assuming Rexall could meet the threshold requirements for an accounting of Perrigo's profits, bore the burden of apportioning those profits between sales due to the allegedly false advertising and sales due to other factors. *Burndy* does not address this issue in any detail and, therefore, does not carry the weight Perrigo ascribes to it. In sum, *Burndy* is not inconsistent with the cases cited above, which hold that it is a Lanham Act defendant who bears the burden of apportionment.

Finally, although the Court holds that the defendant bears the burden of apportionment, any profit award under the Lanham Act is subject to the principles of equity, and the statute also requires that any monetary award serve as "compensation and not a penalty." *See* § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in it discretion enter judgment for such sum as the court shall find to be just. Such sum . . . shall constitute compensation and not a penalty."). Thus, even if Perrigo had been unable to apportion profits, Rexall would not necessarily have been entitled to all profits from the sale of products bearing the Compare To statements. *See, e.g.*, *Pedinol Pharmacal, Inc. v. Rising Pharms., Inc.*, 570 F. Supp. 2d 498, 506 (E.D.N.Y. 2008) ("While [counter-plaintiff] is entitled to a profit award, it would be inequitable for the court to assume that [counter-defendant] was unjustly enriched as to each and every sale of [the product at issue] made during the relevant time period."); *see also George Basch*, 968 F.2d at 1540 (explaining that, in assessing whether an award of profits is equitable, the district court should consider, *inter alia*, "the degree of certainty that the defendant benefited [sic] from the unlawful conduct," the "availability and adequacy of other remedies," "plaintiff's

6

laches," and "plaintiff's unclean hands"); *Jackson*, 2009 U.S. Dist. LEXIS 116770, at *44-45 ("While the Court might have the discretion under the Lanham Act to award Plaintiff all of the Coco Bongo nightclub's profits earned during the infringing period, in the exercise of its discretion, given that the profits are overwhelmingly attributable to factors other than the limited use of Plaintiff's G-Unit mark, the Court finds that such an award would be inequitable.").

III. CONCLUSION

In sum, the Court finds that, in a Lanham Act false advertising case, where the plaintiff proves all elements on the issue of liability (including causation) and establishes that it is entitled to disgorgement of the defendant's profits, the plaintiff bears the burden of showing only the sales of the violative products. The defendant must establish any deductions, including costs and any apportionment for sales that were not due to the allegedly false or misleading statements.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 12, 2010
Central Islip, New York

\* \* \*

Rexall is represented by Bruce R. Ewing, Sandra Edelman, and Morgan Hilpert of Dorsey & Whitney, LLP, 250 Park Avenue, New York, NY 10177. Perrigo is represented by Paul Garrity and Robert S. Friedman of Sheppard Mullin Richter & Hampton LLP, 30 Rockefeller Plaza, 24th Floor, New York, NY 10112 and by Michael Lynch and August Horvath of Kelley Drye & Warren, LLP, 101 Park Avenue, New York, NY 10178.